Good morning. May it please the court. My name is Stephanie Adractis and I represent Byron Chinchilla. Mr. Chinchilla was convicted of four counts of attempted premeditated murder based on an incident where his co-defendant, Sotelo, fired four shots at a group of men pursuing them on foot and in two cars while Chinchilla and Sotelo fled on foot. Chinchilla's trial counsel was prejudicially ineffective when she failed to request a jury instruction as to the lesser included offense of attempted voluntary manslaughter. The jury could have convicted Chinchilla of that lesser offense if it had found that Sotelo fired due to a sincere but unreasonable belief that that was necessary in self-defense. So your contention is that counsel failed to request the imperfect self-defense? That's correct, Your Honor. Did counsel request, I don't remember if it was he or she, did counsel request the perfect self-defense? She did not. In the jury instruction conference it was noted that co-defendant's counsel... Sotelo did. Sotelo did. However, because Mr. Chinchilla's liability for attempted murder in any count was derivative of Sotelo's, it applied to them both. And so the trial judge decided to give the instruction and as a result there was no tactical basis to not ask. And did Sotelo's counsel ask for the imperfect? No. Okay. So should your counsel, should counsel for Chinchilla have asked for the imperfect self-defense on behalf of Sotelo? She should have asked for it... On behalf of Sotelo. On behalf of them both because the only avenue... Yes, but doesn't that undercut her strategy? Isn't that the reason why she didn't request the perfect self-defense instruction either? No, Your Honor. If one reads the counsel's closing argument, which I provided in the supplemental excerpts of his record, she very clearly was asking the jury to find that Sotelo fired in self-defense. She emphasized that point. She said he was scared, he was afraid, he was being pursued by two carloads of people. She's consistent with her own theory, which is whatever Sotelo's doing, it's to her benefit if that happens, if Sotelo gets the perfect self-defense or the imperfect self-defense. But her whole theory is my guy didn't bring a gun. He didn't know that Sotelo had a gun. He's along for the ride, misbehaved a little bit, stolen a cap. But he didn't realize these guys were going to fire. That was, if anything, a sub-argument and one that was destined to fail because it was very clear that the basis for Mr. Chinchilla's liability was wholly based on him as an aider and abetter of natural and probable consequences of the robbery and the proceeding itself. But he doesn't know that they've got a gun. Sotelo says Chinchilla didn't know I had a gun. But under the law that was given by the judge to the jury, that didn't help Mr. Chinchilla very much, if at all, because by the time Mr. Sotelo fired... The jury couldn't have come back and said Sotelo's guilty of murder, but Chinchilla's not an aider and abetter? They could have, but the argument that he didn't know about the gun was a complete losing argument because Sotelo had already produced the gun during the robbery that happened minutes before the attempted murder. Right. According to Sotelo, nobody's going to be more surprised than Chinchilla that he's got a gun. But that argument just couldn't apply to the attempted murder counts. It could have only applied to the robbery because when the... You don't think a jury could have been discerning enough to say Sotelo gets it here, but Chinchilla doesn't? Sotelo also testifies that Chinchilla is actually ahead of him. He's not right with him. Now, the other guys testify that they're together, but Sotelo says, no, he'd gotten ahead of him because I'm talking on the phone, trying to get the car here. Yes, it's possible that a jury could have said, well, he was a few yards ahead and didn't know, but the natural and probable consequences rule that the judge explained to the jury undercut that argument and there was no legitimate reason for counsel to bypass the opportunity to argue that Sotelo's belief in the need to defend could have also been unreasonable and that on that basis, the court or the jury could have convicted them both of the much lesser offense of attempted voluntary manslaughter. Here, we're talking about four life sentences that were imposed as a result of the... And the self-defense defense was a defense, i.e., they wouldn't be convicted of anything. The self-defense is a complete defense, but the unreasonable self-defense is actually a lesser-included offense. It's a doctrine by which you get to attempted voluntary manslaughter. And so this kind of tactical all-or-nothing possibility is actually discussed in the Crais opinion that I cited in the briefs, and it is equally unreasonable for a trial lawyer in this circumstance to potentially try an all-or-nothing strategy, and I don't think that's what she was doing here. I think in Crais we said that it was not unusual for counsel and not inappropriate for counsel to try an all-or-nothing strategy. It was inappropriate to not give the jury the opportunity to consider the lesser-included offense. But my understanding is that you're saying that she didn't, in fact, adopt an all-or-nothing strategy, that the closing argument, for example, did at several points talk about the... She conceded. I mean, she had this problem when she had to deal with what Sotelo thought and now what Chichilla thought with regard to any kind of self-defense, but she did talk self-defense a fair amount. Right. Counsel never explained why she didn't ask for the unreasonable self-defense, and I think the reasonable inference here is that she just did. I was trying to talk about something else, which is, was it inconsistent with her strategy? It was consistent with her strategy. She should have asked for this instruction because she... One of the parts of her argument that was least effective is when she said, well, but his belief had to be reasonable. And the prosecutor sees it on that, too, in his closing remarks. Well, you know, they're saying that he was afraid and, you know, maybe he was afraid, but it wasn't reasonable. And if the prosecutor had had to concede, well, you know, you have to convict him of this much lesser crime if he was afraid, even if it was unreasonable. By the way, just because I don't understand it, what was the basis for the accomplice conclusion? The accomplice... I mean, I understand it with regard to the robbery, but on the mergers, what was the basis? The aiding and abetting liability is based on the natural and probable consequence doctrine, which is a way of assigning liability to the co-defendant based on another offense. Here, the robbery... He knew Sotelo had the gun and... It's based on foreseeability. The whole doctrine is not that he actually physically aided and abetted that shooting, but that the shooting was a reasonably foreseeable event following the robbery is the way that it works. So what about on the prejudice question, assuming... The California court, as I understand it, did assume that there was... that it was error not to give the instruction, at least. Right. They found that it was the judge's error not to give the instruction. That it was... The trial court should have given that unreasonable... But they said that it was not prejudicial and they had reasons. And why is those reasons unreasonable? Two reasons. One is that the rationale that they used was, well, the jury convicted these guys of the greater offense of premeditated attempted murder, and as a result, there's no prejudice under Strickland, and Crace directly addresses that point to say that's simply bypassing the Strickland reasonable probability standard. They're substituting... I think the California Court of Appeals handled this quite differently from the Washington Supreme Court in Crace. In Crace, you have an attorney who didn't... wasn't aware of the law in Washington, and we had this bizarre fact situation with an equally strange law in Washington that applied to brandishing swords, and counsel simply wasn't aware of the statute. Of the brandishing statute. Of the brandishing of the sword. Here, this is a very different situation. Well, we have no evidence here that counsel was aware that she should have asked for the unreasonable self-defense. But the question of self-defense is front and center in the case. It is, but the question of unreasonable self-defense and whether that mitigates a premeditated attempted murder to attempted voluntary manslaughter is more... it's not as obvious. The California Supreme Court, or the California Court of Appeals, does something different from what the Washington Supreme Court said. The Washington Supreme Court treated this like a Jackson versus Virginia problem. It just said, was there evidence to support the jury's verdict? Yes, end of story. And in Crace, we said, no, that's not an adequate answer. Now here, the California Court of Appeals did something different. It didn't say, was there evidence to support this? It said, is the jury's ultimate finding inconsistent with... that is, they cannot exist simultaneously with the theory of imperfect self-defense. And it said, that is true. By finding what it found, the jury could not have found imperfect self-defense, and therefore there's no prejudice. And I address this in the brief as well. That is as flawed of an analysis fundamentally as the one in Crace, even though it's not exactly the same. But... It's flawed because, as I explain in the brief, premeditation is an issue that the jury should not have reached. If it had been properly instructed as to unreasonable self-defense... But that's not the question on prejudice, right? I mean, the question on prejudice is from what we know about what they did decide. What would this jury have done if they were properly instructed? A jury could have found that this was a premeditated act and still found that it was done in self-defense. That's a different point than what you were just making, and it doesn't depend on Crace, right? Right, exactly. It's a different point, but I tried to explain this in the brief, and I cited a case I think is very apt of a California case talking about a young man who clearly had premeditated and planned using a weapon to defend himself, and the California court sent it back saying, you've got to consider whether this was unreasonable self-defense. But also premeditation can be extremely transitory. It can. For example, he saw these people coming after him, and he took out the gun and decidedly decided to shoot them because he was afraid of them. That would be premeditated, but it could still be self-defense. It could be. But if one looks at the prosecutor's closing arguments, he is clearly relying on this idea that the premeditation occurred because Sotelo brought the gun with him and was thinking about the fact that he's going into this dangerous place. So the premeditation, we don't know what the jury actually relied on when they said, yes, this was a premeditated crime. But they could have found premeditation simply from the fact that after these people started chasing him, he said, I better do something about this. They could have. But the bottom line is it doesn't drive the verdict such that one could say, oh, well, because they found premeditation, they necessarily had to have found that he couldn't have acted on unreasonable self-defense. It's just not there. That doesn't resolve that question. It is true that the jury necessarily rejected some part of the story as it pertained to the robbery, right? Some part. I mean, they may have bought the idea that, hey, if you rob someone and then run away, you're not entitled to defend yourself. Now, that's not true. I mean, but the judge's instructions I included in the excerpts, the first aggressor, if they flee, they do recover the right to defend themselves. And this is probably a tough issue for a jury to wrap their heads around, and especially then when you get to the step of even if it's unreasonable that they think that the actual instruction on the imperfect self-defense does have a provision about which could pertain to the fleeing. These facts. What does it say exactly? Well, it talks about the fact that if one believes unreasonably but sincerely that one has to defend oneself, then that mitigates the offense from murder to manslaughter. The separate instruction about being a first aggressor, which the jury found here that Mr. Sotelo and Mr. Chantilla were the first aggressors because they convicted them of the robbery, that instructs the jury that if a person who is a first aggressor stops fighting and being an aggressor and shows by their words or conduct that they've stopped. Defense does not apply when the defendant, through his or her own wrongful conduct, has created circumstances which justify his or her adversary's use of force. Right, and that's the contrived self-defense, which we just don't have here because at the time that Chantilla and Sotelo are, you know, that Sotelo fires his shots, he's clearly running away. He's not by any means trying to set up a situation where he's provoking someone and then shooting them supposedly in self-defense. That might turn on the question as to whether the jury thought that Chantilla was ahead of Sotelo because Sotelo was talking on the phone, therefore that Chantilla was trying to get away from the situation quickly, or whether he was right there with Sotelo. So that's what Sotelo says he's ahead of him. The other guys say no. The two of them are right together. They're together. But I don't think that Mr. Chantilla's liability derived from a direct aiding and abetting theory as in direct physical assistance or even standing by. I mean, this was a natural and probable consequences case where the prosecutor was really arguing, well, he knew about the robbery and he participated in taking this guy's baseball hat and his key chain, and so it's foreseeable that Mr. Sotelo would use the gun against the others. And that, too, is the second basis for the court of appeals holding that's objectively unreasonable because they're saying, well, the jury found that Mr. Chantilla robbed those guys of the hat. Basically, they rejected the key chain theory. They didn't believe the witness who said his key chain was taken, and they found him not guilty of robbing that particular witness. But the other one who said, well, and they all agreed. Sotelo said Chantilla took this guy's baseball hat as they were leaving, and that's the basis for the robbery conviction. It is not objective. In other words, you're saying it wasn't even necessarily in consistent with? With what Sotelo was saying. Sotelo said those guys roughed us up, and then, you know, there was ten of them and two of us, and so I took out my gun to, you know, show them to leave us alone, and then as we were leaving, Chantilla took the guy's baseball hat. That's the robbery, and that's the only one that the jury said was a true robbery. The other one that they were trying, in fact, the other two incidents, they just didn't buy it. And so in that case, the court of appeals said, oh, well, they found him guilty of robbery, and so that's why it was inevitable that they would have rejected unreasonable self-defense. That's just not the case. That was essentially just this trivial taking that, you know, at the end of a disputed instance. There's nothing trivial about it. If you're two guys against ten, you don't take a guy's baseball cap and walk off. He shouldn't have done it. Especially when you're letting them know what your gang affiliation is. Yes. And you can repeat it as you walk away. You guys have just been hit by the Playboys. And they shouldn't have done it. That's what the—there was a dispute about how all this went down, and there were clearly a lot— There was no dispute about them identifying that they were Playboys when they got there and that they said that as they left after Chantilla had taken the guy's baseball cap. Well, you know, the defense attorney argued, the one for Sotelo, that he was actually trying to hide his gang. He said these guys didn't want to be known as Playboys. They covered themselves up completely. They were just going to the party to be at a party, and they didn't want to be known as Playboys because Playboys don't have any allies, and they knew that they could get in a situation like this. So that was a disputed point, whether they had said they were Playboys or were trying to advertise. They said they were Playboys on the way in. They said they were Playboys on the way out. That's what—I mean, defense counsel argued that prior to this, you know, confrontation, that he had been trying to hide it. But be that as it may, it doesn't save the court of appeals analysis that simply assumes that the jury would have rejected unreasonable self-defense when there's no logical connection between the facts that they cited and the decision that the jury would have had to make if they had gotten the instruction that they should have had. Okay. Your time is up. Thank you. I will give you a minute in rebuttal. Thank you. Sir. Good morning. May it please the Court. Scott Taylor, Deputy Attorney General for Appellee and Respondent. You know, the court of appeal, the Supreme Court, the magistrate, and the district court all got it right when they said that the verdicts that were returned by the jury in this case indicated that there was no prejudice from giving— All right. Would you tell me exactly why, and particularly, why is it inconsistent with prejudice, why is it inconsistent with deliberateness, and why is it inconsistent with the findings on the robbery? Well, there's actually three reasons, and all of them fairly independent. First of all, when they found the defendants guilty of the robbery, they necessarily were rejecting Sotelo's testimony. Now, counsel is suggesting— Why? We just went over that. Exactly why. Why couldn't he have just taken the hat as he was leaving? Because what Sotelo said was that these people were— And also, why does that matter? Why does it have to do with the imperfect self-defense? Well, because what Sotelo said was the other people hit them up. They were messing with Chinchilla. He brought out his gun to defend them. He put it away as they were walking away, and that's when Chinchilla took the hat. That's not a robbery for Sotelo. If you look at the elements of a robbery, that's not him taking a hat by force, not him aiding and abetting, which is what the argument was by the prosecutor, that as to the robbery, Sotelo was the aider and abetter of that. But that's inconsistent with what Sotelo said about how that developed. And if the jury rejected that testimony— That's awfully technical, but leaving that aside, why does it matter? Well, if the jury rejected that testimony, there was absolutely no basis to differentiate between his testimony about what happened after and what happened during the robbery. They just rejected it and found him not credible. So if they found him not credible, then the bully had— Well, not necessarily. They could have disbelieved him about the robbery, but thought he was— I mean, the notion that if somebody is being followed by some people in a car and by nine people and two in a car and seven on foot and maybe a second car, they might be afraid and might have— It doesn't have much to do with the other point, does it? Well, it does because— There's some objective evidence there about the fact that there was something to be afraid of. Well, it does because they reject all of his testimony about what happened at the robbery and keep in mind that the four victims and an independent witness, that Chinchilla's attorney said during argument, this is the credible person, this is a person you can rely upon in terms of their testimony, which is Mr. Godoy. He says, no, they're not chasing after him. They're going 5 to 10 miles an hour. Chasing. I think he said that they were just doing it slowly. I thought the distinction was between they were doing it in a— they were going 5 to 10 miles an hour or they were going 25 miles an hour, but there's no doubt that they were following them, is there? No, but the difference is, is that an eminent threat of harm. The four victims testified that they were following him to get a license plate number. That's presumably why they didn't get the self-defense, but that's why she's arguing that maybe if they had had— I mean, the one thing that is true here is that Chinchilla's involvement in the shooting was pretty peripheral. Yes. And he got four life sentences for murder out of it. Yes. And if they had had an option, which didn't have him walking away altogether, the jury might have bought it for him. No, that's what they argued, and that's why— Well, they argued that it was—as I understand it, they argued for self-defense, which would have meant he's absolved altogether. Well, now we're talking about even a de novo review, whether or not there was deficient performance. And, in fact, I'd invite the court, look at the argument. He didn't argue—or she didn't argue self-defense in the very— She did. I looked at it. I'm sorry. She did it several different times. Your Honor, the argument was— Five or six times she did. No, not five or six times, Your Honor. What she said was that self-defense, they were both scared, but the very beginning of the closing argument was, these are two people, don't convict Chinchilla for all these things that Sotelo did. Right. Because they're two different people, and you have to look at them differently. Did you say that? And at the end, she said it again, where she said, Sotelo's guilty of a lot of things here, but that doesn't mean Chinchilla is. And she even said, you know, Chinchilla might be guilty of a theft because he took the hat, and he might be guilty because it's obvious he's a gang member, but that doesn't mean he's guilty of everything else. And what she was trying to do there was to separate the two based on Sotelo's argument. And she also said, for example, when we talk about self-defense, we're going to talk about why you have to consider his, meaning Sotelo's, perspective. You're in Mr. Sotelo's position. Cars are coming down right after you've had a confrontation, and you have to ask yourself, is he scared? He better be scared. Who wouldn't be scared? Exactly. She did say that. Fear is a huge element in this case, but it works both ways. A gun is a tool, right? And then she goes on. That's one time. Then later on she says, let's see, they got pissed off and started following them because they're going to get back. There's the word revenge used. Okay, let's get this straight. You're confronted by these two. A gun was pulled out. You didn't know it was real, so you stepped right in. And then you know he was shrunk. That's one of the victims. He said he was angry. He said he was shrunk. How would you keep going after these people with a gun again and again even after you get to police? That testimony was that the victims were not credible. That wasn't self-defense. And then he goes on and says – Your Honor, my point is that the argument was don't convict. Look at them differently. Chinchilla didn't have a gun. He was up ahead of Mr. Sotelo. There was no gesture. There was no looking back by Chinchilla. And you should convict him of a theft and a substantive gang crime. But the other things are things that Sotelo did by himself and that Chinchilla did not aid in a bet. And then he says just ask yourself, is it reasonable for Mr. Sotelo and Mr. Chinchilla to be in fear that night? Ask yourself that question. Is it reasonable? Because when you read the jury instructions, that's what it comes down to. So, I mean, and she goes on and on. So she did argue at some length. No, she did on some level. Well, you began and said no. You began by saying she didn't. She did. The main argument was that Chinchilla should be looked at independently. Also keep in mind, by arguing self-defense, she was arguing acquittal the same way as she was arguing acquittal on aiding and abetting. I didn't do the math because my math ability is shaky, but I believe that on an imperfect self-defense, Mr. Chinchilla was looking at over 50 years. There would have been four counts of attempted voluntary manslaughter along with the gang enhancement. That's 10 years as to each count. So to suggest she was unreasonable for arguing, not asking for the self-defense instruction, not asking for the imperfect self-defense instruction, and not arguing imperfect self-defense when he was going to do over 50 years as a result, she was trying to minimize his exposure. So could she have, could counsel for Chinchilla have requested an imperfect self-defense instruction for Sotelo? Yes, because I think, because Chinchilla's liability in that regard was tied to Sotelo. But that's not what she was doing. Well, I asked a slightly different question, because the self-defense instruction only comes in as to Sotelo. Isn't that correct? No, it goes to both of them. For example, if Sotelo was found to be in self-defense in terms of the four counts of attempted murder, then Chinchilla couldn't be convicted of this. He couldn't be any more than that. He couldn't get, Chinchilla couldn't get anything more than Sotelo could get. So if Sotelo was acquitted. But even if Sotelo, well, okay, I see. If Sotelo's acquitted, then Chinchilla would have to be acquitted on that. And if Sotelo gets imperfect self-defense, voluntary manslaughter, that's what Chinchilla's going to get. But the bottom line here is when you look at. What if Chinchilla's lawyer and Chinchilla don't want that instruction? Then what happens? Maybe they don't want it because they want an all-or-nothing defense. Well, I think that as the court found that they were entitled to both a self-defense and an imperfect self-defense instruction. Well, I understand, but suppose Sotelo. Well, Sotelo was complaining about it later. But suppose Sotelo. What I understand, Judge Bybee, asking is if Sotelo didn't ask for this imperfect self-defense, could Chinchilla ask for it for him? No. Neither one asked for the imperfect self-defense. No, they didn't ask for it. But we're trying to understand what the lawyer could have done. The lawyer could have asked for either self-defense, which she didn't, or imperfect self-defense, which she didn't. For whom? For conceivably both of them. But that's what I'm asking you. Suppose Sotelo's lawyer didn't want that. If the evidence supported it, it doesn't matter if he didn't want it or not. Yeah. I mean, the interesting thing is that Sotelo doesn't ask for the imperfect self-defense. The Court of Appeal finds that it's error for the trial court not to have instructed that. And you're suggesting that Chinchilla, and I assume Sotelo, could have gotten 50 years on the imperfect self-defense. It might have been a very good reason for even Sotelo's lawyer not to have asked for imperfect self-defense. So maybe the Court of Appeal is wrong on that point. Well, no, because they don't have that option. According to California law, if the evidence supports a lesser-included offense or self-defense, it's required to be given by the court. So if it was required to be given by the court, then where does the ineffectiveness come in? In other words, if this is something that the court's supposed to do sui sponte, then if the lawyer asks for it or doesn't ask for it, it's still supposed to happen. Yes. So does that affect the analysis of whether there was adequate representation or not? No, because what we look at in terms of a Strickland analysis, and we do this with a significant amount of deference, we also have to remember that we presume that counsel was competent, and unless there's evidence to show that it wasn't a tactical reason, we have to presume that it was a tactical reason. And here, there were many different reasons for defense counsel not to ask for it. Not to ask for it, but according to the state court, it should have been given whether she asked for it or not. Right. But what difference does it make if she asked for it? Because the analysis is whether she was incompetent for doing it, not whether the trial court was erroneous for failing to give it. The trial court has to give it regardless. I understand that, but there is something peculiar about saying that she – I mean, it may cut against prejudice and against that – in a weird way, it wasn't prejudicial that she didn't ask for it because it should have been given whether she asked for it or not. So the question wasn't whether she asked for it because it wouldn't have made a difference. It should have been given anyway. But that's on prejudice. I'm arguing – you know, sometimes people ask friendly questions. I'm suggesting that there is something about the prejudice issue here that's different because I'm wondering whether there could be prejudice from not asking for something that you had a right to anyway. Yes, there could be. Why could there be? Well, the analysis the district court did when it said she could have had tactical reasons for not asking it, that goes to the deficient performance prong of Strickland. In other words, we presume she's competent. We presume there's a tactical reason. But if she had asked for it, do we know whether the judge would have given it? We have to assume – He was supposed to give it anyway, and he didn't give it. So why would he have given it if she asked for it? We assume that the judge would have given it. And we do? Okay. And that goes back to the prejudice aspect of it. Now, the prejudice aspect I started to get to, first of all, you have the fact that they rejected his testimony. Secondly, you have the fact that if they believe Sotelo, and thereby actually Chinchilla and Sotelo, committed a robbery, then under those circumstances, there's an instruction they would have had to give if there was a – there's an instruction they would have had to give which basically says if the defendant, by his own wrongful conduct, commits an unlawful act that makes it so that the victims then – I don't have the exact wording – he's not entitled to imperfect self-defense. So by virtue of the jury finding that they committed a robbery, they weren't entitled to imperfect self-defense because they initiated – Well, that – I mean, we read that – I just read that instruction, and it's not at all clear that it applies to this. Maybe it does, but – It clearly does, Your Honor, because it says if wrongful conduct – if they committed a robbery. If they commit a robbery that entitles the victims then to use force, which is to go get their property, they're not entitled to imperfect self-defense. Would the fact that he robbed him justify the adversary's use of force, meaning if they were actually trying to run them over, that would justify – be justified by the fact of the robbery? Hmm. I don't know. Oh, of course not. No, I don't think so. All right. What I'm saying is – So therefore, it isn't true that it would necessarily apply. But that's apples and oranges. What it is is whether he's entitled to imperfect self-defense, not whether the victims are entitled to kill him. Imperfect self-defense does not – the instruction you're talking about – Yes. – does not apply when the defendant, through his or her own wrongful conduct, has created circumstances that justify his adversary's use of force. The adversary's use of force that he was supposedly afraid of was that they were following him and they could run him over with a car or something like that, right? Right. Would that be justified? No, but it doesn't have to be justified. Of course it does. That's what the instruction said. I just read it to you. Your Honor, it's not saying that the victims would be justified. It's saying that the defendant, once he robs them and causes them to come after him, he's not entitled to imperfect self-defense. No, it doesn't. I'm sorry, but that's not what it said. It's not a causation problem, counsel. It said – the instructions that Judge Verzon just read said, if they are justified. They're not justified in using extreme force to recover the baseball hat. That's the problem. And at that point, then, I think the imperfect self-defense may still be available. All right. That's my understanding of what Judge Verzon just read. Let me move to the premeditation and deliberation. Now, I agree in the abstract you can possibly have premeditation and deliberation, but what we're looking at here is the court of appeals saying it's not reasonably probable that once they find premeditation and deliberation, that they would have also found imperfect self-defense. And if you look at the instructions on premeditation and deliberation and also those on imperfect self-defense, you'll see that premeditation is a carefully weighed consequence, cold calculated decision to kill. While the imperfect self-defense talks about an imminent and present danger must be instantly dealt with, I think it's reasonable for the trial court to say once they find premeditation and deliberation, the idea that they would have also found imperfect self-defense doesn't make sense. While in the abstract it's possible that could occur, under these factual circumstances, they're certainly completely inconsistent with each other, those states of mind. And, you know, going back to the idea of deficient performance, it seems to me that if you look at the attorney's argument, if you look at the amount of time he was facing under an imperfect self-defense, which was a lot of time, if you look at the civilian witness's testimony, Godoy, who she says, and that's another way you can tell what is the tactic here, she says, Godoy, he's credible. What he said makes sense. And what Godoy said is they're back there going five miles an hour very slowly, not an imminent situation. So all of those put together, you'd have to look at this and say, yes, of course, her tactic was she wanted to get off the hook in terms of everything or maybe even self-defense, but imperfect self-defense, 50-plus years, that's not what she was looking for because that wouldn't have really been much of a defense. Okay. Thank you very much for joining us. Thank you very much. I'll give you a minute. Go ahead. Thank you, Your Honor. I want to address quickly the sentencing issue. On attempted voluntary manslaughter, the top of the determinate triad is five and a half years. So with four counts, the trial judge would have had the option to either run them concurrent or consecutive, but even with that, you're not at 50 years. I mean, it's just and it's a determinate term. Instead of getting life with the possibility of parole, which is what he got four times, he would have had a determinate sentence where he would have had an out date and not have to face the parole board. So it's very significant. That would not have been a reasonable tactical. Nobody ever asked the lawyer. She did testify. Is that right? She didn't. She declared a conflict of interest after the trial, and so another lawyer took over on behalf of Mr. Chinchill, and he filed a motion for a new trial arguing that this was ineffective, and there was no testimony. The trial judge just treated this in a very summary fashion and said, well, I shouldn't have even instructed on self-defense in the first place, so the motion's denied, and the court of appeals disagreed. He essentially said he wouldn't have given the instruction, even if asked. Right. But the court of appeals said he was wrong about that, and I wanted to get to that, too. So that's so then what difference does this? This is sort of what I was aiming at before. If he wouldn't have given it, even if asked, and he should have given it, although not asked, then what's the prejudice from her not asking? The court of appeal held that he should have given it. So, I mean, I think where we are is that she should have asked. He should have given it. But he says he wouldn't have given it, even if asked, and the court says he should have given it, although not asked. So what difference does it make that she didn't ask? The problem the trial judge had with the rationale that he gave is under California law, if you give a self-defense instruction, which he had to admit he did because he did, he was obligated to give the lesser instruction. I understand he was obligated. So, therefore, why does it matter that she didn't ask? If she had asked because he did choose to give it, his mindset was clearly different during the trial than it was after the trial. If she had asked during the trial and she had showed him the authority that he was bound to give it, he would have given it because he gave the self-defense instruction. I mean, his mindset changed after the trial. He didn't want to grant a new trial. During the trial, he gave the self-defense instruction. He was obligated. And this is a hybrid of two things. It's partly a defense, but it's also a lesser-included offense. And as counsel discussed, the judge is required in California. If there's a lesser-included, then they have to give that, even if the parties are objecting. So this was clearly an oversight, in my view, looking at the entire thing. The trial lawyer did not recognize that she should have asked for this instruction. But that only gets us to the prejudice question, then, doesn't it? Right. Yes. And as to prejudice, counsel argued that, well, premeditation and the self-defense, they're just completely inconsistent. Well, because they have nothing to do with each other. The absence of self-defense is an element of the crime of murder in California and manslaughter, the absence of self-defense. So these jurors are going to have to consider, at the beginning of the analysis, was this self-defense or was it reasonable or unreasonable if they had been given all the instructions? They never would have reached the issue of premeditation. The idea of thinking about something beforehand, of arming yourself, never would have come into their thought process because it's not relevant. The only way that you get to premeditation is if you've already decided that there was no self-defense, and then you have to look at intentionality, you have to look at thought process, you have to look at what happened in time and how it went down. But they have nothing to do with each other, and that's why. All right. Thank you very much. Thank you for your argument. Thank both of you for your argument. The case of Cinchilla v. Lewis is submitted, and we are in recess. Thank you.
judges: Berzon, Bybee, Woodcock